UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

American General Life Insurance Company,

Plaintiff

v.

Christopher Demetro, et al.,

Defendants

Case No. 2:25-cv-01982-CDS-MDC

**Order Granting the Plaintiff's Motion for Default Judgment**

[ECF No. 14]

Plaintiff American General Life Insurance Company seeks entry of default judgment against defendants Christopher Demetro and Dorothy Williams-Yanko, who have not appeared in this action. Mot., ECF No. 14. Having reviewed American General's motion, I find that it is entitled to such relief and accordingly enter a default judgment against Christopher Demetro and Dorothy Williams-Yanko.

## I.      Legal standard

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (explaining the process). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). However, "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros Ent., Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted).

After default is entered, a party may seek entry of default judgment under Rule 55(b). The "general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Whether to grant a default judgment lies within the district court's discretion. *Id.*

## II.        Discussion

### A.  Procedural history

American General commenced this action on October 15, 2025. Compl., ECF No. 1. Federal Rule of Civil Procedure 4 allows for service of process on "an individual within a judicial district of the United States" by "delivering a copy of the summon and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e)(2)(A). Here, the defendants were served with the summons and complaint at their respective home addresses on November 6, 2025, which is within 90 days of the filing the complaint. Aff. of serv., ECF Nos. 8, 9; Fed. R. Civ. P. 4(m).

After the defendants failed to respond to the complaint by the November 27, 2025 deadline, American General sought default from the clerk, and the clerk entered default on December 18, 2025. ECF Nos. 11, 13. On January 26, 2026, American General filed a motion for default judgment seeking declaratory relief: (1) rescinding all coverage under a life insurance policy issued to the defendants, (2) declaring the policy void ab initio, and (3) declaring that American General has no obligations or liabilities with respect to the policy. Mot., ECF No. 14. The defendants have not responded to the motion or otherwise appeared in this action.

American General has satisfied the procedural requirements for default judgment as the clerk has entered a default against Christopher Demetro and Dorothy Williams-Yanko. ECF No. 13. It has also shown the substantive factors outlined in *Eitel v. McCool* weigh in favor of default judgment. ECF No. 14 at 10–16; *Eitel*, 782 F.2d at 1471–72.

Upon entry of default, I take as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). In the complaint, American General requests declaratory relief, as well as an award of actual, compensatory, consequential, and punitive damages, and an award for all recoverable costs and attorney's fees. ECF No. 1 at 10. However, because American General seeks only declaratory relief, a determination of any amount of damages is unnecessary. And although American General seeks to recover attorney's

2

fees and costs in their prayer for relief, they do not seek an award in their motion for default judgment, so I do not address that request in this order.

### B.   The *Eitel* factors

Under *Eitel v. McCool*, to determine whether default judgment is proper, I must consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

The first *Eitel* factor favors default judgment. The defendants failed to defend this action; thus, American General will be prejudiced if judgment is not entered as it has no other means to litigate its claim. *See PepsiCo, Inc. v. Calfornia Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Specifically, without an entry of a declaratory judgment, American General may be prejudiced if the policy is not rescinded because the defendants obtained the policy by misrepresenting Williams-Yanko's health conditions. *Am. Income Life Ins. Co. v. Lopez*, 2012 U.S. Dist. LEXIS 145777, *3 (D. Nev. Oct. 9, 2012) (prejudice to plaintiff-insurer found where the defendant-insured made misrepresentations in his application for life insurance). Thus, if American General's motion is not granted, it will likely be without recourse.

The second and third *Eitel* factors favor default judgment when the "plaintiff state[s] a claim on which the plaintiff may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). To weigh these factors, I must evaluate the sufficiency of the complaint and the merits of American General's alleged claims for relief: (1) rescission of the April 15, 2025 life insurance policy, and (2) fraud. *See generally* ECF No. 1.

American General requests declaratory relief. Specifically, rescission of the policy on the basis that the defendants made numerous material misrepresentations in their application—namely, Williams-Yanko's "*extensive* health and medical history" ECF No. 14 at 13. American General issued the April 15, 2025 life insurance policy to the defendants at a "preferred non-tobacco" premium class rating based on Williams-Yanko's negative responses to questions regarding her health and medical history on the life insurance application. Policy number 4250043231, Pl.'s Ex. A-1, ECF No. 14-1 at 11–48.

In its complaint, American General alleges that it asked the defendants specific questions in the insurance application, and the defendants responded "no." Among those:

(1) Has the Proposed Insured ever been diagnosed as having, been treated for, or consulted a member of the medical profession for . . . coronary artery disease, heart attack, chest pain, shortness of breath, irregular heartbeat, heart murmur, or other disorder or disease of the heart?

(2) Has the Proposed Insured ever been diagnosed as having, been treated for, or consulted a member of the medical profession for . . . pituitary, thyroid, adrenal, or disease or disorder of any other glands?

(3) Has the Proposed Insured ever been diagnosed as having, been treated for, or consulted a member of the medical profession for . . . anxiety, eating disorder, depression, suicide attempt, bipolar disease, post-traumatic stress disorder (PTSD), hallucinations, psychosis, schizophrenia, or other psychiatric conditions?

(4) Other than previously stated, in the past 5 years, has the Proposed Insured . . . been hospitalized, consulted a member of the medical profession or had any illness, injury or surgery?

ECF No. 1 at ¶¶ 12–13, 16, 19; *see also* Williams-Yanko's application, Pl.'s Ex. A-1, ECF No. 41-1 at 31–43.[1]

---

[1] This is a sampling of the questions on the insurance policy application regarding Williams-Yanko's medical and familial history. Williams-Yanko also denied her parents had a history of cancer diagnosis or treatment, denied having urinary incontinence, denied having sleep apnea, denied having chronic pain, denied having shortness of breath and problems with balance, and denied using a mobility chair and a walker. ECF No. 1 at ¶¶ 11, 14–15, 17, 21–22. Moreover, Williams-Yanko responded "no" in answering "Within the last 5 years has the Proposed Insured been treated for or been diagnosed by a member of the medical profession for any other medical, physical, or psychological condition NOT disclosed above?" *Id.* at ¶ 23.

American General argues that, in answering "no" to these questions, the defendants made material false representations because Williams-Yanko did, in fact, have diagnosed "ischemic cardiomyopathy, congestive heart failure, atrial fibrillation, chronic obstructive pulmonary disease, shortness of breath, sleep apnea, hypothyroidism, degenerative osteoarthritis of the knees, chronic pain syndrome, neuropathy, polyneuropathy, degenerative disc disease, lumbar spinal stenosis, urinary incontinence, anxiety, and bipolar disorder." ECF No. 1 at ¶ 30. And medical records revealed that Williams-Yanko was hospitalized, within the past five years, for a ruptured appendix and severe back plain, muscle spasms, and leg dragging. *Id.* at ¶ 37. American General argues that underwriter Laura F. Stout's declaration shows that it is entitled to rescind the policy because "[h]ad the Defendants accurately reported Williams-Yanko's . . . medical and health history to American General as required in the Application, the Policy would not have been issued and placed in effect under the same terms, and American General would have declined to insure[] Williams-Yanko." Stout decl., Pl.'s Ex. A, ECF No. 14-1 at ¶ 34. Stout also states that "this is one of the most egregious cases of material misrepresentations that I have ever seen in my career as an underwriter." *Id.*[2]

Under Nevada Revised Statutes § 687B.110, an insurer may rescind an insurance contract based on "[m]isrepresentations, omissions, concealment of facts and incorrect statements" that are:

1. Fraudulent;

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

3. The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

---

[2] American General advised the defendants of the misrepresentations, its intention to rescind the policy, and offered the defendants to provide additional information if they believed the information detailed was incorrect in any way. ECF No. 14-1 at 8, ¶ 35. The defendants cashed the refund check but did not execute the voluntary rescission agreement nor dispute the alleged misrepresentations. *Id.* at ¶ 37.

American General's allegations—assumed to be true—establish that it is entitled to rescind the life insurance policy. They sufficiently allege that the defendants made multiple material misrepresentations on Williams-Yanko's life insurance policy application. So NRS 687B.110 applies here and permits American General to rescind the insurance policy. The Stout declaration shows that Williams-Yanko's misrepresentations were material, and American General would have declined the application had it known Williams-Yanko's true answers.

In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation to the seriousness of the defendants' conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010)); *PepsiCo*, 238 F. Supp. 2d at 1176. The plaintiff does not seek any amount of money, but rather seeks declaratory judgment rescinding all coverage under the policy on the life of Williams-Yanko, declaring the policy void ab initio, and declaring that American General has no further responsibilities or obligations under the policy. Other judges in this district have found, and I agree, that "[t]he fourth *Eitel* factor . . . favors entering default judgment [when] there is no sum of money at stake." *Ditech Fin. LLC v. Northgate Homeowners Ass'n*, 2018 WL 2943441, at *3 (D. Nev. June 12, 2018); *Bank of Am., N.A. v. Giavanna Homeowners Ass'n*, 2020 WL 3100826, at *3 (D. Nev. June 11, 2020). Thus, this factor also weighs in favor of entry of default judgment.

The fifth *Eitel* factor weighs the possibility of a dispute regarding facts material to the case. *PepsiCo.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (citation omitted). American General has sufficiently pled facts demonstrating that (1) the defendants' misrepresentations, omissions, concealment of facts and incorrect statements resulted in American General issuing the life insurance policy; and (2) the misrepresentations, omissions, concealment of facts and incorrect statements were material to the acceptance of risk or that would lead American

General to not have issued the policy. The defendants have not appeared to rebut any of American General's allegations, and although they had the opportunity to dispute whether Williams-Yanko's responses to the questions were in fact misrepresentations, they have chosen not to do so. Consequently, there are no disputed issues of fact. This fifth factor weighs in favor of entry of default judgment.

The sixth *Eitel* factor considers whether the defendants' default is due to excusable neglect. *PepsiCo.*, 238 F. Supp. 2d at 1177. No evidence before me suggests that the defendants failed to respond due to excusable neglect. Thus, the sixth *Eitel* factor also weighs in favor of entry of default judgment. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a defendant that failed to appear in the action).

Finally, the seventh *Eitel* factor considers the policy favoring a decision on the merits. "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the defendants' failure to respond to the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, while this final *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from entering one. "A decision on the merits is desirable, but under these circumstances, default judgment is warranted." *Nevada Prop. 1, LLC v. Kiwibank Ltd.*, 2020 WL 5633048, at *2 (D. Nev. Sep. 21, 2020).

## III.    Conclusion

IT IS HEREBY ORDERED that the plaintiff's motion for default judgment **[ECF No. 14]** **is GRANTED**.

Declaratory judgment is entered against Christopher Demetro and Dorothy Williams-Yanko with American General Life Insurance as the prevailing party. American General's life insurance policy number 4250043231 is null, void, and rescinded ab initio. American General is discharged from all obligations or liabilities to Christopher Demetro and Dorothy Williams-Yanko in this action and under life insurance policy number 4250043231.

The Clerk of Court is kindly instructed, after entering judgment accordingly, to close this case.

Dated: February 12, 2026

_____
Cristina D. Silva
United States District Judge

8